UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARK ALLAN CARLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-49 |
| | ) |
| SAUL TAYLOR ESKOW | ) |
| | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff Mark Allan Carley ("Mr. Carley"), by counsel and for his Complaint seeking judgment against Defendant Saul Taylor Eskow ("Officer Eskow"), states as follows:

**JURISDICTION AND VENUE**

1. This Court is vested with subject matter jurisdiction over Mr. Carley's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4). This Court is vested with supplemental jurisdiction over Mr. Carley's state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Mr. Carley's claims occurred within the Eastern District of Virginia.

3. Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in Chesterfield County.

**FACTUAL ALLEGATIONS**

**I. Officer Eskow is Trained on the Operation of Police Vehicles in Nonemergency Circumstances.**

1. At all times alleged herein, Officer Eskow was an employee of the Chesterfield County Police Department working as a patrol officer.

2. Prior to November 28, 2020, Officer Eskow had been trained by the Chesterfield County Police Department on the operation of police vehicles in nonemergency circumstances.

3. Specifically, Officer Eskow had been trained on the content of Va. Code Ann. § 46.2-920, which provides that law enforcement vehicles may only be operated in excess of the speed limit when emergency conditions are present and the vehicle's emergency equipment has been activated.

4. Additionally, Officer Eskow had been trained on the content of Chesterfield County Police Department's policy entitled "Vehicle Operations and Pursuits." An authentic copy of this policy has been appended hereto as **Exhibit A**.

5. Accordingly, as part of his training on that policy, Officer Eskow was aware that—as a matter of departmental policy—he was required to abide by all traffic regulations unless responding to an emergency with activated emergency equipment (i.e., emergency lights and siren).

6. Officer Eskow had also been trained on the risks associated with driving at night, and that the risks of an accident were significantly increased when driving at night in poorly lit areas at high speeds.

7. Moreover, Officer Eskow had received remedial training on these principles and other principles of defensive driving (such as keeping two hands on the steering wheel) due to having been in multiple vehicular accidents while on duty prior to November 28, 2020.

II. **Officer Eskow Strikes Mr. Carley with His Police Vehicle and Causes Mr. Carley to Suffer Extensive Injuries.**

8. On the night of November 28, 2020, Officer Eskow was employed by Chesterfield County, Virginia as a police officer with the Chesterfield County Police Department.

9. That night, Officer Eskow was on duty and patrolling the area near Route 1 and West Hundred Road when he heard a nearby officer report that a civilian driver was not responding to a traffic stop.

10. However, no vehicular pursuit had been announced.

11. Officer Eskow decided to travel towards the location of the civilian driver who was not responding to a traffic stop.

12. When Officer Eskow decided to travel towards the location of the civilian driver, it was approximately 11:00 p.m.

13. At that time, his police vehicle was stopped at a red light at the intersection of Route 1 and West Hundred Road.

14. Officer Eskow then activated his emergency lights and made a right turn onto West Hundred Road from the main travel lane on Route 1.

15. Upon completing the turn, Officer Eskow deactivated his emergency lights and continued traveling on West Hundred Road.

16. At the particular portion of West Hundred Road that Officer Eskow was traveling at the time, West Hundred Road is a six-lane highway with three lanes in each direction and a concrete median in the center.

17. Additionally, at the particular portion of West Hundred Road that Officer Eskow was traveling at the time, it was very dark and West Hundred Road was poorly lit and had a posted speed limit of 35 miles per hour.

18. Nevertheless, and despite the fact that neither his emergency lights nor siren were activated, Officer Eskow accelerated the speed of his police vehicle until he was traveling at a speed well above the posted speed limit (approximately 30 miles per hour over the speed limit).

In doing so, Officer Eskow deliberately chose to disregard his training and ignore both the requirements of Va. Code Ann. § 46.2-920 and the mandates of departmental policy.

19. Prior to November 28, 2020, Officer Eskow had been trained and was aware that operating his police vehicle at such speeds constituted reckless driving under Virginia law. Va. Code Ann. § § 46.2-862 (providing that the operation of a motor vehicle more than 20 miles per hour over the speed limit constitutes reckless driving).

20. Furthermore, despite his decision to accelerate the speed of his vehicle well in excess of the posted speed limit, Officer Eskow made no effort to monitor the speed of his vehicle as he was driving and only kept his left hand on the steering wheel, while partially giving his attention to a device in his right hand.

21. In choosing to unlawfully exceed the speed limit on West Hundred Road, Officer Eskow forfeited any right of way he might have otherwise had vis-à-vis pedestrians crossing the highway. Va. Code Ann. § 46.2-823 ("The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have under this article.").

22. While traveling in the center lane of West Hundred Road, Officer Eskow approached two pedestrians traveling across West Hundred Road. Officer Eskow's excessive rate of speed and inattentiveness while driving prevented him from detecting the presence of pedestrians until he was right upon their position.

23. Officer Eskow swerved to the left to avoid striking the pedestrians and began applying his brakes. However, given his excessive speed, Officer Eskow was unable to fully control his police vehicle and drove the vehicle up onto the cement median of West Hundred Road. It appeared to one of these pedestrians that Officer Eskow was traveling approximately 50-60 miles per hour at the time he passed by them—i.e., 15-25 miles per hour over the posted speed limit.

24. At the time that Officer Eskow traveled up onto the concrete median of West Hundred Road, Mr. Carley was traversing crossing the highway and near the median. There were no marked crosswalks or nearby intersections at that point on West Hundred Road and the crossing location that Mr. Carley had chosen was the most direct route to his destination on the other side of the highway.

25. At the time that he attempted to cross West Hundred Road, Mr. Carley was wearing a yellow reflective vest and orange cap.

26. After swerving to avoid the pedestrians in the roadway, Deputy Eskow traveled a distance **in excess of 112 feet** and struck Mr. Carley with his police vehicle. After striking Mr. Carley, the police vehicle traveled approximately 84 feet from the point of impact to its stopping point. The impact caused Mr. Carley's body to travel 113 feet from the point of impact.

27. Officer Eskow's body worn camera footage from the night of the incident demonstrates that **1.4 seconds or less** elapsed from the moment he first swerved around the pedestrians on West Hundred Road until he struck Mr. Carley with his police vehicle. Given the curved trajectory of Officer Eskow's police vehicle, the physical distance between these two points on West Hundred Road was **in excess of 112 feet.** Therefore, Officer Eskow's police vehicle was moving at **an average speed** greater than 55 miles per hour in the 1.4s preceding the moment of impact. Va. Code Ann. § 46.2-880.

28. A witness who observed the accident called 911 and reported that Officer Eskow's police vehicle had struck Mr. Carley at a speed of 50 miles per hour.

29. As a result of Officer Eskow's deliberate disregard of Virginia law and departmental policy, Mr. Carley suffered serious and permanent injuries and incurred over one million dollars in medical expenses. His injuries included, but were not limited to, a fractured left

leg and pelvis, a broken hip, a broken rib, a mild traumatic brain injury with internal bleeding, a laceration to his right knee, a collapsed lung, and lacerations to his head.

### COUNT I: 42 U.S.C § 1983 (Substantive Due Process)

30. The foregoing allegations of this pleading are incorporated herein by reference.

31. As an employee of the Chesterfield County Police Department, Officer Eskow's operation of his police vehicle while on duty as described herein amounted to conduct under color of state law.

32. Mr. Carley, pursuant to the Fourteenth Amendment of the United States Constitution, was and is vested with the federal right of substantive due process by virtue of the Due Process Clause.

33. As of the evening of November 28, 2020, Officer Eskow was subjectively aware of the substantial risk of physical harm posed to nearby motorists and pedestrians (including Mr. Carley) by operating his police vehicle at excessive speeds, particularly when doing so at night and without the vehicle's emergency equipment activated.  He was further aware that the danger created by operating his police vehicle in this manner was enhanced by his inattentiveness to his vehicle's speed and by failing to keep both hands on the steering wheel of his vehicle.

34. Despite Officer Eskow's knowledge to that effect and his awareness that an emergency situation did not yet exist, Officer Eskow deliberately chose to operate his police vehicle at speeds that would constitute reckless driving under Virginia law.  Further, he elected to do so at night, on a poorly lit highway, and without use of his vehicle's emergency equipment.  He engaged in this reckless driving while only keeping his left hand on the steering wheel and giving his attention to a device in his right hand rather than the speed of his police vehicle and the occupants of the roadway.  In doing so, Officer Eskow acted with deliberate indifference to the

rights of other nearby motorists and pedestrians, including Mr. Carley, and struck Mr. Carley with his police vehicle in violation of Mr. Carley's substantive due process rights.

35. As a direct and proximate result of the unconstitutional conduct articulated in this Count, Officer Eskow struck Mr. Carley with his police vehicle with sufficient force to launch Mr. Carley's body 113 feet from the point of impact.  This collision visited grievous injuries upon Mr. Carley, to include a fractured left leg and pelvis, a broken hip, a broken rib, a mild traumatic brain injury with internal bleeding, a laceration to his right knee, a collapsed lung, and lacerations to his head.

36. As a direct and proximate result of the unconstitutional conduct articulated in this count, Mr. Carley has experienced significant physical and mental pain and distress, and has incurred significant medical expenses and is likely to incur additional medical expenses in the future. Additionally, Mr. Carley has suffered a significant loss of quality of life and function, and is likely to experience such losses in the future.

### COUNT II: Negligence/Gross Negligence

37. The foregoing allegations of this pleading are incorporated herein by reference.

38. At all times described herein, Officer Eskow owed a duty to other motorists and pedestrians on the roadway, including Mr. Carley, to operate his police vehicle with reasonable care.

39. Officer Eskow breached the duty of reasonable care that he owed to Mr. Eskow by operating his police vehicle at speeds that would constitute reckless driving under Virginia law, and particularly while doing so at night, on a poorly lit highway, and without use of his vehicle's emergency equipment.  He further breached his duty of reasonable care by operating his police

vehicle under these conditions while only keeping his left hand on the steering wheel and giving his attention to a device in his right hand rather than the speed of his police vehicle.

40. Officer Eskow's deliberate decision to operate his police vehicle in this reckless manner was in contravention of his own training as a law enforcement officer, as well as controlling departmental policies and Virginia law. Officer Eskow knew or should have known that his recklessness was likely to cause injury to others and his conduct evinces a want of even scant care on his part for other motorists and pedestrians on the roadway, to include Mr. Carley. Accordingly, Officer Eskow's conduct constitutes gross negligence under Virginia law.

41. As a direct and proximate result of the negligence and gross negligence articulated in this Count, Officer Eskow struck Mr. Carley with his police vehicle with sufficient force to launch Mr. Carley's body 113 feet from the point of impact. This collision visited grievous injuries upon Mr. Carley, to include a fractured left leg and pelvis, a broken hip, a broken rib, a mild traumatic brain injury with internal bleeding, a laceration to his right knee, a collapsed lung, and lacerations to his head.

42. As a direct and proximate result of the negligence and gross negligence articulated in this count, Mr. Carley has experienced significant physical and mental pain and distress, and has incurred significant medical expenses and is likely to incur more such expenses in the future. Additionally, Mr. Carley has suffered a significant loss of quality of life and function, and is likely to experience such effects in the future.

WHEREFORE, Mr. Carley demands judgment against Officer Eskow in the sum of FIVE MILLION DOLLARS ($5,000,000.00) for compensatory damages, his fees and costs expended in this action pursuant to 42 U.S.C. § 1988, and prejudgment interest from the date of the collision.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
MARK ALLAN CARLEY

By: _____/s/_____
                Counsel

Jonathan E. Halperin (VSB No. 32698)
Isaac A. McBeth (VSB No. 82400)
Halperin Law Center, LLC
4435 Waterfront Drive
Suite 100
Glen Allen, VA 23060
Phone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
isaac@hlc.law